**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
───────────────────────────────

**DALE K. LITTLE,**

                              Petitioner,

                                                    **01-CV-100A(Sr)**

          v.

**JOSEPH F. McCOY,** Superintendent,
Cayuga Correctional Facility,

                              Respondent.

───────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

          Petitioner Dale K. Little ("Little") filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction based on his guilty plea in Niagara County Court on one count of Manslaughter in the First Degree.  This matter was referred to the undersigned by the Honorable Richard J. Arcara, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and is presently before the undersigned for a report and recommendation.  (Dkt. #9; Dkt. # 31).

## BACKGROUND

### *Factual Background*

          In the early morning hours of July 5, 1986, a relative of store-owner Ronald Phillipson ("Phillipson") discovered his body on the rear storeroom floor of his business located on Hyde Park Boulevard in the Town of Niagara, New York.  Responding to the relative's 911 call, police discovered that Phillipson had been shot in the back of the head with a .22 caliber handgun, his wallet stolen and the store cash register tampered with.

1

Within months, Little, who lived in close proximity to the Phillipson murder scene, became the focus of the murder investigation. However, investigators did not believe that they had enough unimpeachable evidence to charge Little with murder at that time.

Shortly thereafter, while incarcerated at a state facility for an unrelated robbery, Little confided to numerous people, including a former jail-mate, that he was responsible for Phillipson's death. Shortly after Little's release from prison, police investigators confronted him with his jailhouse admissions and threatened to indict him with murder. On March 18, 1997, Little confessed that he had shot Phillipson in a dispute over money and disposed of the murder weapon, a .22 automatic handgun. Little was indicted in Niagara County on March 25, 1997, with three counts of Murder in the Second Degree in violation of New York Penal Law Sections 125.25[1], 125.25[2] and 125.25[3] respectively.[1]

Little was arraigned on April 4, 1997 before Niagara County Court Judge Charles J. Hannigan. The County Court denied Little's motion to suppress his oral and written statements regarding the homicide and determined after a *Singer*[2] hearing that the pre-indictment delay did not violate Little's right to a speedy trial. On November 6, 1997, Little pleaded guilty to Manslaughter in the First Degree (N.Y. Penal Law § 125.20). For his crime, Judge Michael F. Griffin sentenced Little to an indeterminate sentence of imprisonment of 8 and 1/3 to 25 years on February 11, 1998.

---

[1]    Indictment 95-104.

[2]    See *People v. Singer*, 44 N.Y.2d 241 (1978).

***Procedural Background***

Little appealed his conviction to the Appellate Division, Fourth Department ("Fourth Department"), raising, *inter alia*, issues now asserted in his habeas petition: (1) that he was denied due process by the nine year pre-indictment delay ("Claim Fifteen"); and (2) that the Court improperly denied his motion to suppress his oral and written statements, which were obtained in violation of his right to counsel ("Claims Eight, Twelve, and Fourteen").   On March 31, 1999, the Fourth Department unanimously affirmed his conviction, *People v. Little*, 259 A.D.2d 1031 (4th Dep't 1999), and the Court of Appeals denied leave to appeal.   *People v. Little*, 93 N.Y.2d 926 (1999).

Little filed a CPL § 440.10 motion to vacate his conviction supported by several affidavits and letters, raising the following claims: the Judge and Prosecutor were guilty of misconduct ("Claim Sixteen"); the grand jury proceedings were defective because he was denied the right to testify ("Claim Nine"); the prosecutor failed to instruct the grand jury on lesser included offenses; and his counsel's representation was constitutionally ineffective.   With respect to the ineffective assistance of counsel claim, Little alleged that assigned counsel rendered ineffective assistance of counsel in the following ways: (1) by failing to call witnesses at the grand jury ("Claim Two"); (2) by failing to suppress Little's statements made to jailhouse informants ("Claim Three"); (3) by failing to timely move for dismissal of the indictment ("Claim Ten") based on insufficient evidence ("Claim Five") or grand juror bias ("Claim Six"); (4) by failing to move for a mistrial at the *Singer/Huntley* hearing ("Claim Four"); and (5) by advising Little to plead guilty ("Claim Eleven").   On June 30, 2000, the Niagara County Court denied the motion, and the Fourth Department denied

permission to appeal on November 24, 2000.  This habeas petition followed on February

13, 2001.  For the reasons set forth below, Little's petition should be DISMISSED.

## DISCUSSION

### *Exhaustion*

Before seeking a writ of habeas corpus in federal court, a federal habeas

petitioner must exhaust all available state court remedies either on direct appeal or

collateral attack of his conviction.  28 U.S.C § 2254(b); *Bossett v. Walker*, 41 F.3d 825, 828

(2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995).  The exhaustion requirement is

"grounded in principles of comity; in a federal system, the States should have the first

opportunity to address and correct alleged violations of [a] state prisoner's federal rights."

*Coleman v. Thompson*, 501 U.S. 722, 731 (1991).[3]

To satisfy the exhaustion of state remedies requirement, a habeas petitioner must

present each constitutional claim to the highest state court from which a decision can be

obtained before seeking relief from the federal courts.  *See Morgan v. Bennett*, 204 F.3d

360, 369 (2d Cir. 2000) (*citing Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991).  To properly

exhaust a claim, a petitioner must fairly apprise the state court of the federal nature of, and

the factual and legal premises underlying the claim.  *Grey*, 933 F.2d at 119-20; *see also*

*Diaz v. Mantello*, 115 F. Supp. 2d 411, 416 (S.D.N.Y. 2000) (*citing Pesina v. Johnson,* 913

F.2d 53, 54 (2d Cir. 1990)).

After reviewing the voluminous state records, I find that Little failed to present

---

[3]   Pursuant to AEDPA, a district court may now, in its discretion, deny on the merits a
habeas petition containing exhausted and unexhausted claims, referred to as a "mixed
petition." See *Mobley v. Senkowski*, 2003 WL 22952846, at *2 (E.D.N.Y. Nov. 12, 2003);
28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the
merits, notwithstanding the failure of the applicant to exhaust the remedies available in
the courts of the state.").

two of his claims to the state courts, either on direct appeal or in his post-conviction motion. Specifically, Little did not exhaust his claims relating to the denial of his right to call and confront witnesses at the grand jury ("Claim One"), and Niagara County Court's failure to release him on his own recognizance ("Claim Thirteen").  It is clear that Little can no longer exhaust these claims in state court.   He is procedurally barred from raising the unexhausted claims before the New York Court of Appeals because he has already made the one request for leave to appeal to which he is entitled.  N.Y. Court Rules § 500.10(a). Moreover, because each of these claims was a matter of record, which could have been but was not raised on direct appeal, the state courts are barred from reviewing such claims collaterally.  N.Y. C.P.L. § 440.10(2)(c).

Federal habeas review of this procedurally defaulted claim is only possible if Little can show cause for the default and prejudice attributable thereto, or demonstrate that the failure to consider the federal claim will result in a fundamental miscarriage of justice, i.e., by a showing of "actual innocence."  *Harris v. Reed,* 489 U.S. 255, 262 (1989); *see also Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).  Little can satisfy neither test.  First, Little has neither demonstrated nor alleged cause for and/or prejudice resulting from his failure to exhaust these claims.   Secondly, Little's guilty plea reasonably forecloses any possible showing of "actual innocence," and Little does not suggest, nor does the record reflect, that he is actually innocent of the crime for which he was convicted. Accordingly, this Court cannot review Claims One and Thirteen of Little's petition.

### *Federal Habeas Corpus Standard of Review*

Pursuant to 28 U.S.C. § 2254, as amended by AEDPA, a federal court must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); *Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001). Specifically, AEDPA requires that where a state court has adjudicated the merits of a petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 413 (2000), the Supreme Court held that a state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." *Id.* A state court employs "an unreasonable application" of Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." *Id.*

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, *Whitaker v. Meachum*, 123 F.3d 714, 715 n.1 (2d Cir. 1997), AEDPA also requires a petitioner to rebut that presumption by

"clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *LanFranco v. Murray*, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  *Galarza v. Keane,* 252 F.3d 630, 635 (2d Cir. 2001); *Whitaker*, 123 F.3d at 715 n.1.

If, however, the federal court cannot determine whether the state court has adjudicated a petitioner's federal constitutional claims on the merits, the federal constitutional claims are considered as not having been determined on the merits; as such, the federal court applies the pre-AEDPA *de novo* review standard in such cases, even where the petition was filed after the effective date of the statute. *See Sellan*, 261 F.3d at 313-14; *Boyette v. Lefevre*, 246 F.3d 76, 89 (2d Cir. 2001).

A federal claim is adjudicated on the merits when the state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  *Sellan*, 261 F.3d at 312. In other words, in order to invoke the deferential standard of 28 U.S.C. § 2254(d)(1), "the state court need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment.  No further articulation of its rationale or elucidation of its reasoning process is required."  *Aparicio v. Artuz*, 269 F.3d 78, 93-94 (2d Cir. 2001) (*citing Sellan*, 261 F.3d at 312).  If there is no indication that the federal claim has been decided on procedural grounds, the federal claim will be deemed to have been adjudicated on the merits.  *Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002).  The record reflects that the state courts decided Little's remaining claims on the merits.

### Merits of the Petition

### *Defective Grand Jury Proceeding Based on Denial of Petitioner's Right to Testify and Prosecutor's Failure to Instruct Grand Jurors on Lesser-Included Offenses*

Little claims that he is entitled to federal habeas relief because he was denied the right to testify and thus, the grand jury proceeding was defective ("Claim Nine"). However, Little's claim is not cognizable on federal habeas review because the right to present testimony is purely a matter of New York State law.  It is clearly established that a federal habeas court "may only overturn a state conviction when that conviction was obtained in violation of a federal constitutional right."  *Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 842 (2d Cir. 1997).  It is equally well settled that a criminal defendant's right to testify before the grand jury is not a constitutional right; rather, it is a creature of state statute.  N.Y. CPL § 190.50(5); *Gibbs v. New York*, 2002 WL 31812682, at *4 (S.D.N.Y. Dec. 12, 2002) (the denial of opportunity to testify before grand jury "is a right created by state law alone and non-cognizable in a federal habeas proceeding"); *Green v. Artuz*, 990 F. Supp. 267, 273 & n.8 (S.D.N.Y. 1998) ("[t]he right to testify before a grand jury is a state statutory right, and is not of constitutional dimension."); *Velez v. New York*, 941 F. Supp. 300, 315 (E.D.N.Y. 1996); *Mirrer v. Smyley*, 703 F. Supp. 10, 11-12 (S.D.N.Y.), *aff'd*, 876 F.2d 890 (2d Cir.), *cert. denied*, 493 U.S. 850 (1989).

Little also claims that he was denied due process because the prosecutor failed to instruct the jury on lesser-included offenses ("Claim Seven").  This claim is also not cognizable in a federal habeas proceeding because it does not implicate a federal constitutional right.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  Neither the Supreme Court nor the Court of Appeals for the Second Circuit has held that a state court's

failure to instruct a petit jury regarding a lesser included offense in a non-capital case is a constitutional issue which may be considered on federal habeas review.  *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980); *Knapp v. Leonardo*, 46 F.3d 170, 179 (2d Cir. 1995); *accord Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996) (per curiam); *see also Parks v. People*, 2003 WL 1396440, at *1 (S.D.N.Y. Mar. 19, 2003).[4]  Although these decisions address the failure to give lesser-included offense instructions to petit juries, such reasoning, *a fortiori,* applies to the failure to so instruct a grand jury and therefore, precludes federal habeas relief.

Moreover, Little's guilty plea cured any possible deficiency in the grand jury proceeding resulting from his failure to testify there or the prosecutor's failure to provide instructions on lesser-included offenses.  In *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989), the Second Circuit Court of Appeals considered whether claims of error in a grand jury proceeding, including insufficiency of evidence to indict and the prosecutor's failure to present exculpatory evidence, are cognizable in a habeas corpus proceeding.  The court held that such challenges to a state grand jury proceeding will not permit habeas relief, finding dispositive the Supreme Court's holding of *United States v. Mechanik*, 475 U.S. 66 (1986).  Confronted with a constitutional attack on a federal grand jury proceeding, the *Mechanik* court stated:

---

[4]     The Fifth, Ninth, Tenth and Eleventh Circuits have held that failure to instruct the jury regarding lesser included offenses does not present a federal constitutional question and therefore, will not be considered in a federal habeas proceeding.  *See, e.g., Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976); *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988); *Perry v. Smith*, 810 F.2d 1078, 1080 (11th Cir. 1987).  Other courts have held that a due process violation occurs only when the failure to give such an instruction in a non-capital case amounts to so fundamental a defect as to cause "a complete miscarriage of justice."  *Tata v. Carver*, 917 F.2d 670, 671 (1st Cir. 1990); *Bagby v. Sowers*, 894 F.2d 792, 797 (6th Cir 1990); *Nichols v. Gagnon,* 710 F.2d 1267, 1269 (7th Cir. 1983); *Deberry v. Wolf*, 513 F.2d 1336, 1338 (8th Cir. 1975).

> [T]he *petit* jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the *petit* jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Id.* at 70 (footnote omitted).  From that proposition, the Second Circuit Court of Appeals held that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a *petit* jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in federal court."  *Lopez*, 865 F.2d at 32.

This reasoning applies equally to a conviction achieved by a plea of guilty. *Alston v. Ricks*, 2003 WL 42144 at *7 (S.D.N.Y. Jan. 3, 2003)(guilty plea precluded petitioner's claim regarding prosecutorial misconduct before the grand jury); *Ballard v. Costello*, 2001 WL 1388297, at *8 (E.D.N.Y. Nov. 2, 2001)("[petitioner's] guilty pleas cured any possible deficiencies in the grand jury proceeding").   As Little acknowledged in his plea waiver, his guilty plea has the same force and effect as a jury verdict of guilty.  Since Little admitted to all of the factual elements of the charge against him by entering a plea of guilty, any error in the proceeding which led to his indictment is rendered harmless and is not amenable to habeas review.  *Lloyd v. Walker*, 771 F. Supp. 570, 576-77 (E.D.N.Y. 1991) (*citing Lopez*, 865 F.2d at 32).  For these reasons, I find that Little's claims that the grand jury proceeding was defective, Claims Nine and Seven, must fail.

**Denial of Due Process Based on Trial Court's Refusal to Hold Evidentiary Hearing**

Little claims that he was denied due process when the trial court denied his CPL § 440.10 motion without an evidentiary hearing to investigate his allegations of

prosecutorial misconduct.  It is well established in the New York State courts that a hearing is not required pursuant to CPL § 440.10, "unless the defendant establishes nonrecord material facts which create an issue as to the validity of the judgment."  *People v. Hoke*, 276 A.D.2d 903, 905 (3d Dept. 2000).  When deciding whether state criminal procedural rules like CPL § 440.10 violate due process, the reviewing court must determine if they "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Hines v. Miller*, 318 F.3d 157, 161 -162 (2d Cir. 2003) (*internal citations omitted*).

It is apparent from federal and state case law that a defendant is not entitled as a matter of right to an evidentiary hearing on issues raised in his CPL § 440.10 motion, including those alleging prosecutorial misconduct.  *See, e.g, Maldonado v. Scully,* 1990 WL 102209, *2 (S.D.N.Y. 1990); *Hoke*, 276 A.D.2d at 905; *People v. Swackhammer*, 260 A.D.2d 939, 941 (3d Dept 1999); *People v. English*, 246 A.D.2d 925, 925 (3d Dept 1998); *People v. McGourty*, 188 A.D.2d 679, 681 (3d Dept 1992).  In light of these precedents, I find that the trial court's failure to hold an evidentiary hearing regarding the claims raised in Little's CPL § 440.10 motion did not offend a deeply rooted or fundamental principle of justice and will not provide a basis for habeas relief.  Accordingly, Little's due process claim, Claim Sixteen, must fail.


### Trial Court's Failure to Suppress Statements Allegedly Made in Violation of Little's Right to Counsel

Little contends that his oral and written statements were obtained in violation of his Sixth Amendment right to counsel, and that the trial court improperly denied his

11

motion to suppress these statements.  Specifically, the defendant asserts that at the time he was questioned and gave statements in 1997, without counsel present, he was represented by Attorney Macri on the Phillipson Murder and by Attorney Mansour on an unrelated charge ("Claims Eight, Twelve and Fourteen").

The record reflects that defendant was represented in 1988 by Attorney Macri, on an unrelated robbery charge.  At that time, the Niagara County District Attorney's Office, which had not yet charged Little with the Phillipson homicide, nonetheless made a plea offer to resolve the Phillipson homicide and the unrelated robbery charge.  Little rejected the plea offer and pleaded guilty to the robbery charges only.  In 1997, when he made statements implicating himself in the Phillipson homicide, Little was represented by Attorney Mansour on unrelated domestic violence charges in Niagara Falls City Court.

As previously noted herein, Little raised these suppression issues on direct appeal to the Appellate Division, Fourth Department.  In denying his appeal, the Fourth Department found that Little was not in custody, that he knowingly and voluntarily waived his rights, that the police were unaware that Little had counsel in 1988, and in any event, Macri's 1988 representation terminated upon the sentencing for the robbery, and that Mansour's representation on the unrelated charge did not prohibit police from questioning him regarding the Phillipson homicide.  Insofar as these conclusions are based on findings of fact, they are entitled to a presumption of correctness, which Little has failed to rebut by clear and convincing evidence.

I find that Little's statements were not taken in violation of his federal Sixth Amendment right to counsel and that the trial court properly denied Little's suppression motion.  The Sixth Amendment to the United States Constitution provides that "[i]n all

criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." *Texas v. Cobb*, 532 U.S. 162, 167 (2001).   Once this right to counsel has attached and has been invoked, any subsequent waiver during a police-initiated custodial interview is invalid.  *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)*; Michigan v. Jackson,* 475 U.S. 625, 636 (1986).   However, the Sixth Amendment right to counsel is offense-specific, and attaches only when formal adversarial proceedings have been initiated based on that offense.   *McNeil*, 501 U.S. at 175 (internal citations and quotations omitted).

The Court of Appeals for the Second Circuit has directed that in a state prosecution, it is required that a court look to state law to determine when the adversarial judicial proceeding has commenced.  *See Meadows v. Kuhlmann*, 812 F.2d 72, 76-77 (2d Cir.), *cert. denied*, 482 U.S. 915 (1987).   As the New York Court of Appeals has held, a criminal proceeding is initiated or commenced, and the right to counsel attaches, in New York State by the filing of an accusatory instrument.  *See People v. Blake*, 35 N.Y.2d 331, 339 (1974); *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 349 (2d Cir. 1998); *see also* N.Y. CRIM. PRO. LAW § 100.05.  Finally, once the right to counsel has attached with respect to a particular charge, it does not extend to offenses that are separate from those that have actually been charged.  *McNeil*, 501 U.S. at 175*; see also Cobb*, 532 U.S. at 168.

The record reflects that had Little not been charged or indicted with Phillipson's murder in 1988 or before the time he was interrogated.   Therefore, any admission, conviction or statement made by him regarding the murder was not obtained in violation of his Sixth Amendment right to counsel, because that right had not yet attached since no formal, adversarial judicial proceeding regarding the homicide had been

initiated against him.  Moreover, although Little had a right to counsel with respect to the unrelated robbery and domestic violence charges, the right did not extend to the Phillipson homicide, an uncharged and separate offense.  Because Little's statements were not obtained in violation of his right to counsel, the trial court properly denied his suppression motion.  For these reasons, I find that Little is not entitled to habeas relief on his right to counsel and suppression claims, Claims Eight, Twelve and Fourteen.

***Denial of Right to Speedy Trial Based on Unjustified Preindictment Delay***

Little claims that the ten year and nine month delay between the Phillipson homicide and his indictment violated his Sixth Amendment right to a speedy trial ("Claim Fifteen").  In addressing this issue on direct appeal, the Appellate Division, Fourth Department held that the Niagara County Court properly determined that the People met their burden to establish good cause for the preindictment delay, specifically, that they lacked sufficient unimpeachable evidence to present to a grand jury before Little provided his inculpatory statements in March 19997.  Because the Appellate Division adjudicated this claim on the merits, AEDPA's deferential standard of review applies.  *Sellan*, 261 F.3d at 309.

The Supreme Court has held that, by virtue of the Fourteenth Amendment, the Sixth Amendment right to a speedy trial is enforceable against the States as 'one of the most basic rights preserved by our Constitution.'  *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967); *Smith v. Hooey*, 393 U.S. 374, 374-375 (1969).  In determining whether pretrial delay violates the Sixth Amendment, federal courts must examine four factors: length of

14

the delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "No one of these factors, however, is either a necessary or sufficient condition" to a finding that a person has been deprived of the right to a speedy trial, but each must be considered together with other relevant circumstances. *Id.* at 533; *Davis v. Kelly*, 316 F.3d 125, 127 (2d Cir. 2003).

The record reflects that although investigators suspected Little was responsible for Phillipson's death, there was no evidence linking him to the homicide before he was incarcerated for an unrelated robbery in 1988. Between 1989 and 1994, during Little's imprisonment, investigators monitored his visitors and unsuccessfully attempted to obtain statements implicating him in Phillipson's death. In 1995, the police obtained a statement from David Sneed inculpating himself and Little in the homicide. However, because Sneed was a potential accomplice, this statement required corroboration to support a conviction, which the police did not have. Between November 1996 and late January 1997, police interviewed Little's girlfriend, Sherri Malloy, his friend, Debra Jackson and his former jail mate, Victor Gilchrist, who all reported that Little confessed to killing Phillipson. Armed with this new information, investigators confronted Little on March 18, 1997, and obtained a statement. Little was indicted on March 25, 1997.

Based on the facts of this case, I find that despite the nearly eleven year delay between Little's commission of the crime and his indictment, there was no Sixth Amendment violation. It is clear that the corroborating statements used to elicit Little's confession and to ultimately indict him were not available to the police before January 1997. Moreover, Little was indicted within months of obtaining these inculpatory statements by the police. Nothing in the record indicates that Little was prejudiced by this

delay.  Indeed, it was not time, but Little's own conduct which strengthened the People's case against him, and increased his sentencing exposure.  In 1988, he was given an opportunity to plead guilty to the yet uncharged homicide, which he rejected.  Over the next eight years, he admitted his crimes to parties he should not have trusted, ultimately leading to his voluntary confession to police.  In addition, Little asserted his right to a speedy trial and was afforded a hearing at the trial level, which was subjected to further review on the appellate level.  Both courts found that the People demonstrated good cause for the preindictment delay.  Because the state courts' conclusions were not an unreasonable application of clearly established Federal law, I find that Little is not entitled to federal habeas relief based his speedy trial claim, Claim Fifteen.

### Ineffective Assistance of Counsel Based on Assigned Counsel's Failures Relating to the Grand Jury Proceedings and Indictment

Little claims that assigned counsel rendered ineffective assistance of counsel with respect to the grand jury proceedings and his indictment.  Specifically, he argues that counsel failed to call former assistant district attorney Burgasser to testify in the grand jury ("Claim Two") and failed to file a timely CPL § 190.50 Motion to dismiss the indictment based on faulty instructions, inconsistent charges ("Claim Five and Ten"), and grand juror bias ("Claim Six").

To establish a claim of ineffective assistance of counsel, Little must prove that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different.  See *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Aparicio v. Artuz,*

269 F.3d 78, 95 (2d Cir. 2001).  As stated previously, Little' guilty plea cured any possible deficiency in the grand jury proceeding.  *Lopez*, 865 F.2d at 32; *Alston*, 2003 WL 42144, at *7; *Ballard*, 2001 WL 1388297, at *8.  It necessarily follows that as a matter of law, Little cannot establish that any errors made by his attorney with respect to the grand jury proceeding prejudiced him, thereby foreclosing the possibility of a Sixth Amendment deprivation.  Accordingly, I find that Little is not entitled to habeas relief on these ineffective assistance of counsel claims, Claims Two, Five, Six and Ten.


### Ineffective Assistance of Counsel Based on Assigned Counsel's Failure to Move for Mistrial and Failure to Suppress Testimony of Jailhouse Informants

Little claims that counsel was constitutionally ineffective because he failed to move for a mistrial at the pre-trial *Singer* hearing based on Judicial Hearing Officer DiFlorio's conduct ("Claim Four") or to suppress statements made by the jailhouse informants to whom Little confessed ("Claim Three").  As previously noted, in order to prove that counsel's representation was constitutionally ineffective, Little must show that his counsel's performance was deficient and that he was prejudiced by the ineffective assistance.  *Strickland,* 466 U.S. at 687-88.  Judicial scrutiny of an attorney's professional conduct under the *Strickland* standard is highly deferential.  Little bears the "double burden" of overcoming the presumption that counsel's conduct at the *Singer* and suppression hearings constituted sound trial strategy and of demonstrating that any errors committed by him were in fact prejudicial to Little's defense.  *Strickland*, 466 U.S. at 689, 692; *Howard v. Scully*, 1988 WL 3396, *2 (S.D.N.Y. January 11, 1988).  Little has not met these burdens with respect to either of these claims.

First, Little fails to make a colorable claim that his attorney's failure to move for a mistrial at the *Singer* hearing was an error 'so serious that [his] counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.' *Strickland,* 466 U.S. at 687;*Scully*, 1988 WL 3396, at *2.  According to Little's own habeas petition, counsel was actively engaged during the hearing and raised several objections.[5]  Second, Little has failed to establish that he was actually prejudiced by counsel's failure to move for a mistrial based on DiFlorio's conduct.  In denying Little's CPL § 440.10 motion, the Niagara County Court held that counsel did not render ineffective assistance by failing to move for DiFlorio's removal, a more appropriate motion in light of the pre-trial posture of Little's case at the time of the *Singer* hearing.  Based on the record, I find that the Niagara County Court would likely have denied a motion for a mistrial based on the judicial Hearing Officer's conduct as being premature or inappropriate considering the state of the legal proceedings.  Therefore, Little cannot demonstrate that he was affirmatively prejudiced by counsel's failure to make such a motion.  *See, e.g. Henry v. Scully*, 918 F.Supp. 693, 713 (S.D.N.Y. 1995); *Panton v. U.S*., 1999 WL 945523, *4 (S.D.N.Y., Oct. 18, 1999).

With respect to  the suppression issue, Little has failed to point to any error or omission which establishes that counsel's performance was deficient, or fell below an objective standard of reasonableness.  As New York Supreme Court Justice Griffith observed in his decision denying Little's CPL § 440.10 motion, counsel  "litigated vigorously" for the suppression of the informant testimony. *See People v. Little*, Indictment No. 95-104 (June 30, 2000).  Insofar as this conclusion is based on findings of fact, it is

---

[5]      See Little's Amended Petition, Ground Four

entitled to a presumption of correctness, which Little has failed to rebut by clear and convincing evidence.  Accordingly, I find that Little's ineffective assistance claims relating to the mistrial motion and suppression, Claims Three and Four, are without legal merit.

### Ineffective Assistance of Counsel Based on Assigned Counsel's Advice to Plead Guilty

Little claims that counsel rendered ineffective assistance of counsel when he advised him to plead guilty to the charge of manslaughter, and therefore, his plea was not a knowing and voluntary one ("Claim Eleven").  The "test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (internal citations omitted).  "Where  . . .  a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " *Id.* (*quoting McMann v. Richardson,* 397 U.S. 759, 771 (1970)).  Therefore, Little can only attack the "voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [that range]." *Id.* at 56-57; *Rodriguez v. U.S.*, 1995 WL 413130, *2 (S.D.N.Y, July 12, 1995).

The two-part test articulated in *Strickland v. Washington* applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Lockhart,* 474 U.S. at 58-59.  Therefore, to prevail on his claim, Little must show that counsel's advice to plead guilty to manslaughter was objectively unreasonable, and that there is a reasonable probability that,

19

but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Lockhart,* 474 U.S. at 58-59. With respect to this second prong, it is not enough for Little to show that counsel's alleged errors had "some conceivable effect" on the outcome of the case. *Rosa v. U.S.*, 170 F. Supp. 2d 388, 398 (S.D.N.Y. 2001); *see also Glover v. United States*, 531 U.S. 198, 202 (2001) (holding that "a mere difference in outcome will not suffice to establish prejudice"). To prevail, he must demonstrate that the "decision reached would reasonably likely have been different." *Strickland*, 466 U.S. at 693, 696. The petitioner has failed to establish either prong of the *Strickland* test.

Giving deference to counsel's performance by not evaluating it with hindsight, as I am required to do, I find that it was objectively reasonable for him to advise Little to plead guilty to manslaughter in the first degree to reduce his sentencing exposure and avoid the serious consequences of a conviction for murder. The record reflects that Little faced three counts of murder in the second degree stemming from his involvement in the death of Ronald Phillipson. The People had ample evidence to convict him, including his recorded confession to the police in which he describes, in detail, the events leading to Phillipson's death, and which the trial court determined to be admissible despite counsel's efforts to suppress it. Moreover, Little had failed in his attempt to challenge the People's case based on the lengthy preindictment delay and to suppress the numerous statements provided by those to whom he had confessed about the murder. In light of this overwhelming evidence, it cannot be said that counsel's advice to plead guilty was not a reasonable strategy. *See, e.g., Chang v. United States,* 305 F.Supp.2d 198, 207 (E.D.N.Y. 2004). Based on the record, I also find that Little's wholly subjective statement that he

would not have pleaded guilty, without more, is insufficient to establish a reasonable probability that he would have insisted on proceeding to trial.  Therefore, this claim (Claim Eleven) should be denied.

## CONCLUSION

Based on the foregoing, it is hereby RECOMMENDED that this petition for habeas corpus relief under 28 U.S.C. § 2254 be DISMISSED.  Further, as the Court finds that there is no substantial question presented for appellate review, a certificate of appealability should not issue.  28 U.S.C. § 2253(c)(2) (1996).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report. Recommendation and Order be filed with the Clerk of the Court and that the Clerk send a copy of this Report, Recommendation and Order to Petitioner and to counsel for the Respondent.

**ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**Failure to file objections to this Report, Recommendation and Order within the specified time,  or to request an extension of time to file objections, waives the right to appeal any subsequent order by the District Judge adopting the recommendations contained herein.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *F.D.I.C. v.*

*Hillcrest Assocs.*, 66 F.3d 566 (2d Cir. 1995); *Wesolak v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Judge, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Judge's refusal to consider the objection.**

SO ORDERED.

                        _____S/ H. Kenneth Schroeder, Jr._____
                           HON. H. KENNETH SCHROEDER, JR.
                              United States Magistrate Judge

March 7, 2005
Buffalo, New York